**N. ESTRADA, Inc., v. TERRY.  (No. 3321.)**

Court of Civil Appeals of Texas. Texarkana. Jan. 20, 1927.

Rehearing Denied Feb. 3, 1927. On Second Motion for Rehearing, April 21, 1927.

1. Venue ⊛⇒7—"Cause of action on contract" includes acts and omissions constituting breach, under statute on venue (Rev. Civ. St. 1925, art. 1995, subd. 23).

"Cause of action" arising on contract, within Rev. Civ. St. 1925, art. 1995, subd. 23, permitting suit against private corporation where cause of action arose, includes not only the contract, but acts and omissions which constitute the breach complained of.

2. Contracts ⊛⇒280(1)—"Performance" under contract consists in doing required act at time and place and in manner specified.

"Performance" of an obligation under a contract consists of the doing of the required act at the time and place and in the manner stipulated by the terms of the contract.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Performance.]

3. Venue ⊛⇒7—Cause of action arises in part at place of performance of contract in cases where some performance by plaintiff is condition precedent to suit.

A cause of action arises in part at the place of performance in cases where plaintiff must show performance by himself of a contract or obligations thereunder in order to maintain his action.

4. Venue ⊛⇒7—Venue of action for refusal to accept cotton was not fixed in county of source when seller could buy elsewhere.

Under written contract for cotton made in county where neither buyer nor seller resided, specifying quantity and grade, but not source of cotton, the mere possible or probable expectation of parties that cotton would be obtained in county of seller's residence was not sufficient to fix venue there as county of performance.

5. Venue ⊛⇒7—Buyer's breach of contract for cotton occurred in county where he rejected samples.

Sending samples of cotton by seller to buyer's agent in another county was an offer of corresponding bales for delivery, and, if buyer's rejection was wrongful, the breach occurred in county where the samples were inspected.

6. Venue ⊛⇒7—Cotton buyer, agreeing to accept cotton and communicate bale numbers by phone, but not doing so, breached agreement at place of inspecting samples.

Where buyer accepted part of cotton submitted by sample under contract and promised to communicate bale numbers by phone to seller, but failed to do so, the agreement and its breach both occurred in the county of inspection.

7. Venue ⊛⇒7—Contract provision for delivery to cars at named point did not fix venue of action for buyer's breach, where cotton was not delivered.

Where samples of cotton were sent by seller from county where the bales were, under contract, to be loaded, to county where contract had been made, and samples were there rejected, venue of action for breach was not fixed in seller's county, since delivery to cars was never made.

8. Venue ⊛⇒7—Place of payment under contract is material in fixing venue.

Place of payment under a contract for the sale and purchase of cotton is a material provision in fixing venue of action for damages for wrongful refusal to accept cotton tendered.

9. Evidence ⊛⇒413—Seller's testimony concerning agreed place of payment held inadmissible, under contract, for sight draft payable in buyer's city.

Testimony of seller, in action for damages for buyer's wrongful refusal to accept cotton tendered under contract, that he was to be paid in county of his residence, was inadmissible, as tending to vary plain terms of written contract providing for payment by draft payable in county of buyer.

10. Sales ⊛⇒80—"Place of payment" on shipper's sight draft is at drawee's address.

Under contract providing for seller to attach shipper's sight draft to order bill of lading, "place of payment" is deemed to be in city of drawee's residence.

[Ed. Note.—For other definitions, see Words and Phrases, Place of Payment.]

Appeal from District Court, Red River County; R. J. Williams, Judge.

---

⊛⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Action by C. E. Terry against N. Estrada, Inc. From an order overruling a plea of privilege, defendant appeals. Order set aside, and judgment rendered, sustaining the plea, and directing transfer.

Williams, Neethe & Williams, of Galveston, for appellant.

J. S. Terry, of Terrell, and Robbins & Bailey, of Clarksville, for appellee.

HODGES, J. The appellee, Terry, filed this suit in the district court of Red River county against the appellant to recover the sum of $7,000 as damages for the breach of a contract. The appeal is from an order overruling a plea of privilege. The material facts are, in substance, as follows:

At the time of making the contract Terry, the appellee, resided in Red River county, Tex., and was engaged. in buying cotton in the local market of Clarksville, the county seat of Red River county. The appellant was a private corporation residing in Galveston county, Tex., and was engaged in buying cotton from local dealers. It had an agency located in Dallas, under the management of A. C. Musgrove and Jerry Rutledge, through whom cotton offered to appellant for sale was inspected and accepted or rejected. In October, 1925, the appellee, through his brokers the Stamford Cotton & Produce Company, entered into a contract whereby he sold to the appellant 500 bales of cotton. The contract provided that 100 bales were to be delivered in October, 200 in November, and 200 in December. The price to be paid was 22 cents per pound f. o. b. cars at Clarksville, Tex. After the details were discussed and agreed to the following written confirmation was signed by each party:

"Stamford Cotton & Produce Company.

"Cotton Merchants and Spot Brokers.

"413 South Akard Street, Dallas, Texas.

"Terry Bros., Clarksville, Texas, sellers. N. Estrada, Inc., Galveston, Texas, buyers.

"We hereby confirm having this day sold the above-mentioned buyers through Stamford Cotton & Produce Company, acting as brokers only, the following cotton:

"Quantity: Five hundred bales cotton (500).

"Grade: Equal 59 actual samples; if slightly less leaf will take slightly more color.

"Staple: Equal 59 actual samples.

"Price: Twenty-two cents (22 cents), f. o. b. cars, Clarksville, Texas.

"Delivery: Hundred October, two hundred November, and two hundred December, 1925.

"Terms: Samples to be sent to Stamford Cotton & Produce Company, Dallas, Texas; for delivery. Final settlement on compress weights.

"Reimbursement: Draft on N. Estrada, Inc., Galveston, Texas, with Inv. & B/L with two copies attached, together with compress weights sheets.

"Note: It is understood and agreed that any cancellations between the principals to this contract shall not cancel or reduce the broker's commission."

.The October delivery was accepted and paid for according to the terms of the above-written contract. Samples submitted for the November and December installments were rejected on the ground that they did not represent the staple and grade of cotton called for by the contract. The 400 bales, which were tendered by sample as a fulfillment of the rejected installments, were later sold at 18.60 cents per pound, which, it is alleged, was the prevailing market price at that time.

It is conceded that at the time the suit was filed appellant's domicile was in Galveston county. In the controverting affidavit filed in reply to the plea of privilege appellee relied solely on the exception appearing in subdivision 23 of article 1995 of the Revised Civil Statutes of 1925, which permits a private corporation to be sued in any county where the plaintiff's cause of action, or a part thereof, arose. It is admitted that the contract was made in Dallas county, and that the written confirmation heretofore quoted, as far as it goes, is a correct record of the contract. It is contended by appellee, however, that the writing contains only a portion of the contract; and over the objection of the appellant he was permitted to testify to some details which do not appear in the writing. The material portions of his testimony may be summarized as follows:

On October 19, 1925, he was in Dallas to complete the delivery of two lots of cotton sold to parties not connected with his suit. He had on hand 59 bales of cotton which had not been disposed of. Through his broker, the Stamford Cotton & Produce Company, he opened negotiations with appellant's Dallas representatives, which resulted in the conclusion of the contract here involved. The samples of the 59 bales were to be used in fixing the grade of cotton to be delivered in the future. In answer to the question, where was the cotton to be delivered? he said, "F. o. b. cars, Clarksville, Red River county Tex." He was also asked, "Where were you to be paid for the cotton?" His answer was, "I was to get my money at Clarksville the day that I got my bills of lading signed. The drafts were to be drawn, because that was more convenient to the other fellow; it was more convenient to Estrado." Continuing, he stated that the 59 bales were then in the warehouse at Clarksville and the samples were at Dallas. The remaining 441 bales were to be purchased by him in the Clarksville market and weighed in by the public weigher at Clarksville; it being understood that the compress did not receive street cotton. The bales were then to be sampled by the warehouse people, and a numbered coupon put in each sample, representing the tag number of each respective bale. The samples were then to be sent to the office of the Stam-

ford Cotton & Produce Company at Dallas for delivery· to Estrada or his representatives for inspection and classification. That was the method by which it was to be determined what bales appellant would take. After the details of the contract had been agreed upon the written confirmations were signed. Within a few days appellee received instructions from his brokers to ship the 59 bales. Later, upon similar instructions, he shipped the remainder required to complete the October delivery. He collected the purchase price of that delivery by drawing a draft in favor of himself on Estrada, Galveston, Tex., to which he attached the weight sheets and a shipper's order bill of lading. The drafts were drawn for the exact price of the cotton, plus the exchange charged for remitting the money from ·Galveston. He received only the price of the cotton; that sum being placed to his credit in the local bank through which he drew the draft. When the November installment became due, about December 1st, he forwarded to his broker at Dallas samples of 417 bales to be submitted to Musgrove & Rutledge. Later he went to Dallas to confer in person with Musgrove & Rutledge, who were not disposed to accept the samples submitted. After much discussion and some delay, Musgrove finally agreed to accept 209 bales. Appellee was told by Musgrove to go home and that he (Musgrove) would early the next morning make up the tag numbers of the entire lot and phone them to appellee, together with shipping instructions. Failing to hear from Musgrove at the appointed time, appellee called him over the phone and inquired the cause of the delay in sending the tag numbers and shipping instructions. Musgrove gave an evasive answer, but on the next day sent a telegraphic message offering to accept only 36 of the best bales and declining the others, claiming that the grade was too low. A short time after the receipt of that message another came from Estrado at Galveston declining to take any of the cotton. About the 7th of December appellee again went to Dallas and there offered the same samples as a final fulfillment of his contract. The offer was rejected, and the cotton was later sold at a loss to other parties. After receiving the notice that the samples were not satisfactory the appellee did not load any of the cotton on cars for shipment to the appellant. The tender of the cotton was made· only by samples sent to his brokers at Dallas for inspection by the appellant's agents.

[1-3] The question to be decided is, Did the plaintiff's cause of action, or a part thereof, arise in Red River county? The "cause of action" mentioned in this statute includes not only the contract, but the acts and omissions which constitute the breach complained of. If, in order to establish his right to recover damges for the breach of a contract like this, the complaining party must show performance by him of some obligation, his cause of action arises, in part at least, in the place where according to the terms of the contract that performance takes place. As stated by counsel in their brief:

."Performance of an obligation under a contract consists of the doing of the required act at the time and place and in the manner stipulated by the terms of the contract, and, when the character of the plaintiff's case is' such as to make it incumbent upon him to show such a performance by himself of the contract or some of his obligations thereunder, the place of such performance may be fairly held to be the place at which the cause of action in part arose. This we understand to be the holdings in the cases of Savage v. H. C. Burks & Co. (Tex. Civ. App.)ₓ 270 S. W. 244; Danciger v. Smith (Tex. Civ. App.) 229 S. W. 909; San Jacinto Life Ins. Co. v. Boyd (Tex. Civ. App.) 214 S. W. 482; Peach River Co. v. Ayers, 41 Tex. Civ. App. 334, 91 S. W. 387; Houston Rice Milling Co. v. Wilcox & Swinney, 45 Tex. Civ. App. 303, 100 S. W. 204; Kell Mill. Co. v. Bank of Miami (Tex. Civ. App.) 155 S. W. 325."

Since the contract was made entirely in Dallas county, the material inquiry is, Was the appellee, in making out his case for damages, required to prove performance by him of any obligation in Red River county? Or, in proving a breach, Was he required to prove the failure of the appellant to perform some contract obligation in that county?

This is not a suit to collect the purchase price of cotton sold and delivered or tendered for delivery under the contract, but one for damages for the failure of the purchaser to comply with his agreement to make the purchase. The cause of action, if any, arose when the appellant failed or refused to accept the samples tendered for its inspection at Dallas. In order to sustain its venue in Red River county appellee relies upon the following provisions of the contract: (1) The cotton was to be Red River cotton, and to be purchased by him in the Clarksville market. (2) The samples were to be sent from Red River county, and the tag numbers of the accepted bales, with shipping instructions, were to be returned to that county. (3) The cotton was to be finally delivered to the appellant in Red River county. (4) The purchase price was to be paid in Red River county.

[4] Considering these in the order above stated: The written contract contains no mention of where the cotton was to be purchased or when it was to be acquired. It specifies the quantity, the grade, and staple, without reference to where the cotton was to be grown, or the market in which it was to be purchased. Over the objection of the appellant, Terry was permitted to testify that the cotton from which the samples were taken was grown in Red River county, and

that cotton to be delivered in the future was to be bought by him at Clarksville. He further stated that Clarksville cotton usually commanded a premium in price, but they did not always get that premium. It may be that the parties expected that the cotton would be purchased in the Clarksville market, but there is nothing in the contract which would justify the appellant in rejecting cotton purchased in some other place, if it equaled the sample which furnished the standard of quality. There is nothing in the evidence to justify the conclusion that cotton equal in grade and staple to the samples submitted could not be purchased in the markets of adjacent counties. Moreover, this is not a contract in which the appellee binds himself to buy cotton for delivery to the appellant. It is a contract of sale, without reference to when, or how, the ownership of the cotton sold is acquired. It is founded upon the assumption that the seller owns, or will own, the thing he sells when the time of delivery arrives. So far as this feature of the contract is concerned, the rights and duties of the appellee would not be different, if at the time the agreement was made he then had on hand at Clarksville all the cotton required to fill his contract. Certainly that fact, if it existed, would not alone be sufficient to fix venue in that county. We therefore conclude that the first ground relied on is insufficient.

[5] Passing to the next ground: The samples were to be sent to the appellee's brokers, the Stamford Cotton & Produce Company, for inspection by the appellant's agents. The sending of the samples was an offer of the corresponding bales for sale and delivery under the terms of the contract. The acceptance of those samples or that offer was to be made at Dallas. If the samples were equal to the standard agreed upon, the failure or refusal to accept would occur at Dallas. If the refusal was wrongful the appellee's cause of action arose at once and at the place where the refusal occurred. Terry was not required thereafter to do an unnecessary thing in the way of delivering the cotton itself. If no samples were accepted, there were no tag numbers to be sent nor shipping instructions to be given.

[6] Counsel for appellee contend that the evidence shows that 209 bales were accepted. It is true appellee testified that after much quibbling about the grade and staple Musgrove did agree to accept 209 bales out of a larger lot of samples submitted, but that agreement was coupled with the further agreement, according to Terry's testimony, that Musgrove would select the samples and list the tag numbers and communicate them over the phone. That was not done, and the failure occurred at Dallas. It follows, then, that the agreement was both made and broken in Dallas.

293 S.W.—19

[7, 8] The contract itself provides that the cotton, after the inspection and acceptance of the samples, was to be delivered on board the cars at Clarksville. If this were a suit to recover the purchase price of specific cotton sold and delivered, or tendered for delivery, that provision of the contract might be of controlling importance upon the issue of venue. But this is not that character of suit. The damages claimed, if any are due, accrued when the appellant's agents at Dallas failed or refused to accept the samples tendered. That act rendered the final delivery of the cotton unnecessary. The plaintiff, in making out his case, was not required to prove the doing, or an offer to do, an unnecessary thing; hence that provision of the contract is of no importance in fixing the venue in this case. Biggers v. Hammer (Tex. Civ. App.) 204 S. W. 493; Robbins v. Hill (Tex. Civ. App.) 259 S. W. 1112; Kidd Scruggs Co. v. Tyler Hotel Co. (Tex. Civ. App.) 270 S. W. 566; Haddaway v. Smith (Tex. Civ. App.) 277 S. W. 728. Payment was an obligation by the appellant, and the place of payment is a material provision on the issue of venue. The written contract contains the following:

"Reimbursement: Draft on N. Estrada, Inc., Galveston, Texas, with Inv. & B/L with two copies attached, together with compress weights sheets."

[9, 10] Over the objection of the appellant appellee was permitted to testify that he was to get his money at Clarksville the day he delivered the cotton. We think the provisions as to payment found in the written contract are sufficiently specific to show that payment was not to be made in Red River county. This testimony, therefore, was not admissible, because it tended to vary the plain terms of the writing. The law attached to the language used in the writing a well-defined meaning, and parol evidence cannot be permitted to vary it. Brooks Supply Co. v. Senter (Tex. Civ. App.) 245 S. W. 101; Wolf v. Pittman (Tex. Civ. App.) 247 S. W. 322; Pittman & Harrison v. Houston Bag Co. (Tex. Civ. App.) 247 S. W. 324. Terry was to draw a draft on the appellant, with bill of lading and weight sheets attached, to be sent to Galveston for collection. That was the method adopted in collecting the purchase price of the 100 bales sold in October, and was clearly in accord with the plain provisions of the contract. Whether Terry got his money the day he drew the draft would depend entirely upon the arrangements he made with his local bank in handling the draft. No matter whether he sold the draft to the local bank or delivered it to the latter for collection, payment of the draft was to be made in Galveston. We think the trial court erred in overruling the plea of privilege.

For the reasons stated, the order will therefore be set aside, and judgment here

rendered, sustaining the plea of privilege, and directing that the cause be transferred to Galveston county for trial on its merits.

### On Second Motion for Rehearing.

In this motion the appellee insists that the original opinion written in this case does not fully state some of the material facts. In order to prevent any unfair disadvantage which might otherwise result, we have granted permission to file and have considered the second motion for a rehearing. Upon a re-examination of the evidence, we think appellee's construction of his own testimony is correct. According to that testimony, Musgrove did agree to accept 200 bales of the cotton from the samples before him, and to phone the tag numbers and shipping instructions to appellee the next day. This was not done. However, we do not think that fact requires an affirmance of the judgment of the trial court. The cause of action here prosecuted is not one for the purchase price of cotton tendered by the appellee and accepted by the appellant, but is a suit for the refusal to purchase the cotton according to the previous contract. The refusal constituting the cause of action is not the one relating to furnishing shipping instructions, but to accepting the cotton. If the place of the rejection of the samples tendered by the appellee be of any importance, that, according to the evidence, occurred at Dallas.

The motion is overruled.